CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
REBECCA M. ABEL (Bar No. 298604)
(E-Mail: rebecca_abel@fd.org)
KYRA NICKELL (Bar No. 328816)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ISAIAS LOPEZ

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 2:25-cr-00705-MEMF-1 |
|---|---|
| Plaintiff, | **SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT'S INSTRUCTION ON UNLAWFUL FORCE** |
| v. | |
| ISAIAS LOPEZ, | **Hon. Maame Ewusi-Mensah Frimpong** |
| Defendant. | |

# MEMORANDUM OF POINTS AND AUTHORITY

At the pretrial conference, the Court raised questions regarding the unlawful force instruction proposed by the defense. The defense files this brief with supplemental case law in an attempt to respond to those questions.

### A. Is a officer's "bad faith or proactive conduct" unlawful force?

In *Span I*, the Court articulated the rule that "rule that an individual has a limited right to offer reasonable resistance to an arrest that is the product of an officer's personal frolic. That right is not triggered by the absence of probable cause, but rather by the officer's bad faith or provocative conduct." *United States v. Span*, 970 F.2d 573, 580 (9th Cir. 1992) (citing *United States v. Moore*, 483 F.2d 1361, 1364-65, 1385 (9th Cir. 1973)). This rule did not limit "bad faith or provocative conduct" solely to the excessive force context. To the contrary, the *Span I* court's discussion of the rule arose, not in the portion addressing excessive force, but rather in a context very similar to that raised by Mr. Lopez here. The defense in *Span I* argued that the "district court erred by refusing to give jury instructions offered by the Spans on the right of a defendant to resist an arrest that is unlawful because it is not supported by probable cause." *Id.* at 579. The *Span I* court held it was not error to refuse the instruction, but only because it "did not state the law of our circuit." *Id.* at 580. The law in this circuit is that a defendant does have a right to resist, where the officer engages in "bad faith or provocative conduct." *Id.* This is the instruction requested by Mr. Lopez here.

The bad-faith rule that *Span I* articulated in 1992 was nearly 20 years old at the time, and the *Span I* panel had ordered the parties to file supplemental briefing on the question whether it was still good law. 970 F.2d at 579. Twenty years earlier *Moore* had explained that individuals "of course" can forcibly resist "instances of bad faith, unreasonable force, or provocative conduct by [an] arresting officer." 483 F.2d at 1365. It further explained that the historical basis for the rule dated back to the 1666–1710 English revolution, *id.* at 1365 n.3, and the common-law principle that individuals may "protect[] [themselves] from punishment" by "reasonably resist[ing] unlawful intrusions

1  by government agents," *id.* at 1365.

2        Subsequent panels of this Court have reiterated the bad-faith rule as the law of this
3  circuit, relying on *Span I*'s holding. *Arpin v. Santa Clara Valley Transp. Agency*, 261
4  F.3d 912, 921 (9th Cir. 2001); *Gasho v. United States*, 39 F.3d 1420, 1428 n.7 (9th Cir.
5  1994) (explaining that if officers "acted in bad faith [then] any physical interference to
6  that seizure would be immune," and "the existence of bad faith would be a jury
7  question"); *see also Adams v. Kraft*, 828 F. Supp. 2d 1090, 1109 (N.D. Cal. 2011) (Koh,
8  J.).

9  **B.  Does "unlawful force" include not just excessive force, but also force**
10        **that is unlawful for other reasons?**

11        "[T]he principle that a citizen can defy an unconstitutional act is deep in our
12  system." *Wainwright v. City of New Orleans*, 392 U.S. 598, 613 (Douglas, J., dissenting
13  from dismissal of writ as improvidently granted).

14        The right to resist unlawful force narrowed in some jurisdictions in the mid-20th
15  century, but it still indisputably reaches beyond scenarios where the force is unlawful
16  because it is excessive. The detailed example this Court provided in *Gasho* illustrates
17  the point. If officers "acted in bad faith" because they knew they lacked probable cause
18  for a seizure, "any physical interference to that seizure would be immune." 39 F.3d at
19  1428 n.7. That operation of the rule has nothing to do with whether the officers' force
20  was unlawful because it was excessive: it turns on whether the force was unlawful
21  because taken in bad faith.

22        Similarly, in *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007), the
23  Court "ask[ed] whether a reasonable jury could conclude, viewing the evidence in the
24  light most favorable to Blankenhorn, that the Defendant officers acted in bad faith or
25  engaged in 'provocative' conduct when arresting him. If so, and Blankenhorn's
26  resistance was reasonable, a constitutional violation occurred." *Id.* at 479. In evaluating
27  the officer's conduct, the Court looked first to evidence of excessive force as
28  substantiating the claim of bad faith, concluding that because the "officers used excessive

force in gang-tackling Blankenhorn precludes a finding as a matter of law that those same officers acted in good faith." *Id.* It then went on to examine facts that did not go solely to excessiveness, but rather to an examination of whether "the officers' precipitate actions in making the arrest could reasonably be considered 'provocative.'" *Id.* The Court cited the facts that: the officers gave no warning that they were going to arrest him, that they did not attempt to handcuff him, and that they acted swiftly. *Id.* The Court found these facts could be considered "provocative" and triggered Blankenhorn's limited right to reasonable resistance. Accordingly, *Blankenhorn*—and the other cases cited herein—support the proposition that bad faith and provocative conduct can be proven through facts and argument aside from excessiveness.

Ultimately, when courts and legislatures mean to refer to force that is unlawful because it is "excessive," they say so. When they mean to refer to the broader genus of "bad faith" unlawful force, they say that instead. The history reflects this distinction, too. The Model Penal Code enshrines this understanding. *See* Dkt. 106, at 2–3. It defines "unlawful force" to include any nonconsensual force which "constitutes an offense or actionable tort or would constitute such offense or tort except for a defense … not amounting to a privilege to use the force." Model Penal Code § 3.11(1). Battery is one such tort, in play when officers use excessive force. But so, too, is the constitutional tort of retaliation against protected speech. *See Sanderlin v. Dwyer*, 116 F.4th 905, 910-11 (9th Cir. 2024) (finding the officer's conduct should be considered by the jury both as unlawful retaliation and as excessive force). As the *en banc* Ninth Circuit documented, both it and the Supreme Court "have often referred to the Model Penal Code as persuasive authority in interpreting the Constitution," including in particular the definitions provision, § 3.11. *Smith v. City of Hemet*, 394 F.3d 689, 706 (9th Cir. 2005) (en banc), disapproved on other grounds, *Lemos v. County of Sonoma*, 40 F.4th 1002, 1008–09 (9th Cir. 2022) (en banc).

**C.     The officer's subjective intent is central to claim of self-defense to assault on a federal officer.**

The Court should not foreclose the defense from arguing that Inspector Ranjo's actions here amounted to unlawful force because it was "bad faith" or "provocative conduct." At the hearing, the Court was concerned that a "bad faith" standard would allow the jury to consider the officer's subjective motivations in using force. It is true that such considerations are relevant, but not determinative, in certain civil contexts. *See, e.g.*, *Winterrowd v. Nelson*, 480 F.3d 1181, 1185 n.7 (9th Cir. 2007) (evaluating whether an officer's use of force was in retaliation for protected speech "we must consider the facts [] without regard to the arresting officer's subjective motivation for using force", but "the officers' underlying motivations could cast doubt on their version of the incident. This is a matter to be sorted out by the trier of fact."). But, in the context of self-defense to an assault on a federal officer, an officer's motive and intent are not only relevant but central both to self-defense and to official duties. *See* Mueller & Kirkpatrick, Fed. Evid. § 4:13 Reasons for exclusion—Unfair prejudice (4th ed. July 2025) (noting the relevance of "the state of mind of the victim . . . if self-defense were an issue because then the victim's attitude would bear on the question whether he started the affray" (internal parentheticals omitted)); *Span I*, 970 F.2d at 580 (affirming instruction defining "official duties" as an officer acting "in good faith and colorable performance of [his] duty"); *United States v. Lopez*, 710 F.2d 1071, 1074 (5th Cir. 1983) (applying the same definition).

If Inspector Ranjo subjectively used force to retaliate against Mr. Lopez for his protected conduct, that retaliation was in bad faith and the force was unlawful. Under the self-defense instruction, such unlawful force permits Mr. Lopez to use reasonable force in response if he believes it is necessary to defend himself against continued, immediate unlawful acts. The defense is entitled to an instruction that permits the jury to consider this argument.

4

|   |   |
|---|---|
|   | Respectfully submitted, |
|   | CUAUHTEMOC ORTEGA<br>Federal Public Defender |
| DATED: January 16, 2026 | By  */s/ Rebecca M. Abel*<br>REBECCA M. ABEL<br>KYRA NICKELL<br>Deputy Federal Public Defender<br>Attorney for ISAIAS LOPEZ |